By the Court.
Ingraham, J.
This action was brought to compel defendant, on the receipt of $9,500, to deliver up to the plaintiff the bond and mortgage on *353 premises owned by plaintiff, and that said mortgage be discharged and canceled of record.
The action cannot be held to be an action in equity to redeem, but is based upon a claim that the plaintiff tendered to the defendant the amount due on the bond and mortgage, and that by such tender the lien of the mortgage on the premises was discharged.
No offer is made to pay what the court would find due on the mortgage.
The court below found as facts that on the first of ' July, 1885, the plaintiff offered to pay the principal due on said mortgage, viz., the sum of $9,500, together with three dollars as a fee for the satisfaction-piece, and on the same day tendered the plaintiff the said sum of money, viz: $9,503 in legal-tender notes of the United States; that defendant refused to receive said money and refused to give a satisfaction-piece of said mortgage; and as conclusions of law, that prior to the first day of July, the defendant waived the right to or the necessity for tender by plaintiff, on that day, of the amount due on said mortgage ; that plaintiff made a lawful tender to defendant on the first day of July, 1885, of the whole amount due on said mortgage on that day; and that the lien of the said mortgage was extinguished on the first of July, 1885.
The only questions to be determined in this action are whether or not there was evidence to sustain the finding of fact that a tender was made, or the conclusion of law first above referred to.
As to the first question to be determined—whether or not the finding of the trial judge, that a tender was made on the-first day of - July, 1885, can be sustained—it appeared that about June 25, the attorney for the plaintiff informed defendant that he would pay the mortgage, prior to the 2d or 3d of July following, and on June 26, he wrote fixing a time and place at which the said mortgage would be paid, viz., at the attorney’s office on July 1 at 12 o’clock. On June 29, the attorney for plaintiff again wrote to the defendant referring to his previous letter, *354 and stating that he forgot to ask him to bring the insurance policy with the bond and mortgage and satisfaction-piece, and asking whether the hour, day and place, named in the previous letter, for making payment, would suit his convenience.
The defendant did not answer the first letter. But to the second he sent an answer, dated June 29, the main portion of which is: “Your favor of to-day received. .... I find on looking at the bond, I am to have ninety days’ notice of the intention to pay off the mortgage. Having no immediate use for the money, shall expect the said notice to be given before the payment will be received and satisfaction given.” This letter was received by plaintiff’s attorney June 30.
The defendant did not appear on July 1, at the time and place named, and in the afternoon of that day the plaintiff’s attorney went to the" residence of the defendant and was told by the servant girl he was not in. The plaintiff’s attorney then stated : “I handed the bills ■—showed the bills to the servant with three dollars added for a satisfaction-piece.” It is not stated that the bills were tendered to the servant, or that the attorney offered to leave them with the servant, but on the contrary, it would appear that the tender of the three dollars for the satisfaction-piece was an implied demand for a satisfaction-piece before the money would be left. This, therefore, was not an unconditional tender of the money to the servant. On the same evening Mr. McLean, the plaintiff’s attorney, went to the defendant’s house, saw the defendant, and told him what had transpired at his former visit. The parties then had a dispute as to the right of the plaintiff to pay off the money without notice. No tender of the money was made at that time to Mr. Earle, and there was not an absolute refusal on the part of Mr. Earle to accept the money in payment of the mortgage. What was said was in relation to the transaction with the servant girl, which did not amount to a tender of the money, and the interview ended by Mr. Earle saying, *355 that on Monday, July 6, he would see Mr. Young, another attorney who had acted for a person making a new loan on the property, to see if an arrangement could not be made. On July Y, this action was commenced.
It was said in Tuthill v. Morris (81 N. Y. 95): “In view of the serious consequences resulting from the refusal of such a tender, the proof should be very clear that it was fairly made and deliberately refused by the mortgagee, or some one duly authorized by him. At all events, it should appear that the same was absolutely and unconditionally tendered, and was sufficient to cover the whole amount due. The burden of that proof is on the party alleging the tender.”
The proof in this case falls short of establishing a tender within the rule above laid down. There was no unconditional offer of the money to any one. There was no tender of the money to the mortgagee. There was no time at which he had an opportunity to accept the money. The tender that was made to the servant was coupled with an implied condition that the mortgagee should execute a satisfaction-piece, and there was no opportunity for the servant to accept the money. Defendant was told that the money had been shown to the servant girl, but it was never shown or tendered to him. There is no evidence that the servant girl was authorized by him to receive the money, nor could it be held that a payment to her would have been a payment of the mortgage.
The proof of what took place on July 6 was insufficient to establish a tender on that day.
It appears that Mr. McLean went to the defendant’s house with the $9,500 and interest up to that day, and three dollars fee for a- satisfaction-piece; that he again showed the servant girl the money and told her to tell Mr. Earle that he desired to get the satisfaction-piece then, and leave the money with him. There was no absolute tender made, but McLean wanted to get the satisfaction-piece and then to leave the money, and in addition there is no evidence that defendant knew that McLean was *356 there to make the tender at that time. At none of the interviews was the money absolutely and unconditionally tendered, nor did defendant at any time deliberately or unconditionally refuse to receive the money, and the finding of fact, therefore, that there was such a tender cannot be sustained.
The only remaining question in the case is whether or not the defendant waived the right to or the necessity for a tender. I have examined the testimony, and I am clearly of the opinion that on the facts as proved, the court was not justified in finding that there was any waiver.
As before stated, there never was an absolute and unconditional tender of the money to any one. The defendant claimed his right to a notice of ninety days before he was bound to receive the amount due on the mortgage, but at no time did he absolutely refuse to accept the money, and he never had an opportunity of taking it.
Before he can be said to have waived the tender, he must have placed himself in such a position as would make a tender to him an idle and unnecessary ceremony. I do not think he did so. His first letter to the plaintiff’s attorney simply said, “Have no immediate use for the money. Shall expect the said notice to be given before payment will be received and satisfaction given.” There was no absolute refusal to receive the money, but a refusal to give the satisfaction-piece without the notice, and in the conversation between McLean and Earle on the first of July, the proposition was made by Mr. McLean that Mr. Earle should see Mr. Toung, the attorney for the party making the new loan, and see if he could not remove the objection, and the matter was left in that form. There was nothing here to show that the defendant would have refused the money if unconditionally tendered to him at that time.
I am of the opinion, therefore, that the plaintiff’s proof failed to show either a tender or a waiver, and the *357 judgment must be reversed and new trial ordered; costs to abide the event.
Sedgwick, Oh. J., and Freedman, J., concurred.